Good morning, your honors. May it please the court, Kenneth M. Stern for appellant. This case involves a gentleman with lifelong mental illness. The issue is whether or not his mental illness equitably told the APA statute of limitations. The district court found that because at one point he was able to file his state habeas corpus petition. Therefore, from that time on, he was mentally competent to file his... Isn't that just like Gaston? Gaston v. Palmer? Well, your honor... Aren't we exactly in the same position? Well, in this case, there's another case, LaMarche v. Lamarck. In which the appellant in that case had also filed a petition for habeas corpus in the state court. And this court said that he had a right to a full evidentiary hearing on the issue of mental illness. Despite the fact that he had filed his state habeas corpus. Therefore, I believe that that case in Gaston would be in contradiction of each other. Factually... Which case was that? I believe it's called Lamarche v. Lamarche. Is that Laws v. Lamarche? Excuse me, Laws v. Lamarche. And then you have the third circuit court, Norah v. Frank, 264 F. 310. Which recognizes inter-mental incapacity. Which somebody can be mentally competent on some days and not competent on the other days. And that indicates that a factual determination has to be made for the entire period. What I'm trying to understand is that in the period leading up to this, he definitely had mental illness issues. But then there were a number of reports that suggested that he did not have competency or mental issues at that time. Is all he needs is to allege some ongoing mental illness and then that entitles him to a hearing? Well, Your Honor, in U.S. v. Marlowe, 173 F. 312.13, it says all he needs to do is make a threshold showing of mental illness. And he's entitled to the tolling. In terms of factually as to what Your Honor is speaking of, I think there was one report which was the government's examiner who made some comments. But yet on the other hand, there were five or six reports by mental health professionals all indicating that he had severe lifetime mental illness. Including schizophrenia, bipolar disease, and that he had these problems even when he was drug free. That he was also psychotic, that he had organic brain damage. So I think there's really a very large body of factual expert opinion here that he certainly was mentally incompetent. And in fact, he had been evaluated a week before he killed his stepfather, and they said this gentleman has to be hospitalized. He's a dangerous to people. So if there were an evidentiary hearing, what would be the point in time or the time period in which his mental illness would be evaluated? Well, it would be from the date of the filing of the state petition of habeas corpus up until the time of filing the federal habeas corpus. Which was what date, the state date? I believe it was March or May of 2003. And he filed the federal petition on what date? His federal petition, the application was filed... I believe it was 1995. April 2005? I believe so. I think a prime of facial showing has been made at minimum of the mental illness. Entitling him to at minimum an evidentiary hearing in the district court with the aid of an attorney. I think the district court was wrong, saying merely by virtue of the fact of filing the state habeas corpus. Therefore, he was at all times mentally competent. And there's a Supreme Court case cited in my briefs, Drobe v. Missouri, 420 U.S., I think it's 124, I believe. Which talks about somebody can suffer from mental incompetence for a period of time and then not have it and then have it again. I think what an attorney would be able to do in a full evidentiary hearing would be to thresh out the facts and evidence of his mental illness during the relevant period of time. In which prison medical records could be looked to, prison disciplinary records could be looked to. There could be some tension between Gaston and laws. But the one fact in Gaston that is identical to the situation here is that that gentleman filed a state habeas. Which also was done on behalf of your client. So is there some reason in your view that Gaston doesn't control? Well, yes, because in my case, my client has alleged specifically that despite the filing of the petition for habeas corpus in the state, he still suffered from mental disease and defect thereafter. Which made it difficult to not impossible to cooperate with those who he was dependent upon to help him prepare his petition. And again, I believe that laws and the third circuit of Neuron v. Frank are really the correct rule. People aren't static. A person with arthritis in their hip could have pain on one day and no pain the next and then pain for two weeks and then no pain for a few more days. It's the same thing with mental illness. You can't assume factually that because he filed a state petition there for all times thereafter, he was mentally competent. Is there a Supreme Court case that says that mental illness is a proper basis for equitable tolling? I don't think there's a I don't know that there's a case specifically, but as I've indicated, Droop v. Missouri, I think it was, it talks about mental illness being intermittent. And that's the issue here. So I believe that that case would, although not specifically addressed to APA, would be controlling here because it does talk about there's not one static state of mind. Although there's not a Supreme Court case, the Ninth Circuit has invoked equitable tolling on a number of occasions, hasn't it? Yes, it has, Your Honor. And the Supreme Court has not yet stated unequivocally that equitable tolling is proper. That is my understanding, the rule in this circuit for many, many cases. Unless the court has any further questions at this time. We have a minute left. Good morning. May it please the court. Douglas Nanzig, Deputy Attorney General on behalf of the Pele. Preliminarily, I'd like to invite the court's attention to an error, a topographical error in the Pele's brief on page 13. This is the red brief, your brief? Yes. Page 13, the subsection, designated subsection one that begins with the line, a psychiatric evaluation from December 11th, 2003 should have read from December 11th, 1993. You're talking about under paragraph two? Under subparagraph one. Instead of December 11th, it should be what? No, December 11th is correct, but it indicates 2003 from Dr. Morrell. It should be 1993. Thank you. As to the first issue before the court, which is whether or not equitable tolling should be granted on the record that's currently before the court, I think it's indisputable that there's no evidence whatsoever of any mental illness. I think the district court was frankly incorrect. We did file objections. When it held that there was evidence of present mental illness, the only evidence that has ever been presented to the district court concerned evaluations from 1995 and earlier. There was nothing between 1995 and 2003, the date that the court identified as, because he had filed state habeas petitions in 2003, the district court had said, well, he's at least able as of that date. I think that the district court was making an assumption, an even-if type situation, but under laws, it seems to say that if you make this allegation, and it's not palpably frivolous, that at least you just get an evidentiary hearing to figure out whether you're right or he's right. Why isn't that the case? I don't agree with that interpretation of laws, Judge McKeown. There are a couple of factors that distinguish laws from the present case. I think most importantly, laws set down a standard of alleging mental incompetency. Incompetency has a meaning under the law. It can't be ignored that here, the petitioner has always, even though he's admittedly used the word delusional in various places in his affidavit in support of his petition, he has always tied that in to the notion of, I just don't trust the jailhouse lawyers. Well, he has no constitutional right to representation in these proceedings. Opposing counsel mentioned a little earlier that the mental disease and defect that Petitioner had interfered with his ability to be trusting of those who he's dependent upon to file his petition. I believe he said communicate, not to be trusting. I may have misheard, but I thought that's what he said. He did say communicate earlier, but then he said upon those whom he was dependent upon. He couldn't communicate with... Why don't you deal with his argument rather than recasting it? Yes, Your Honor. His claim is, look, I was gaga. My client had bouts of mental illness, and he had these people that he needed to work with to prepare his petition, and because he was Napoleon that day or whatever his problem is, he couldn't do that. But that is, in fact, not what the record shows. He's never claimed to be delusional in that sense. You said earlier that the only evidence in the record about mental illness was, what, 1995 and earlier? Correct, Your Honor. What does the record show about his mental condition after 1995? There's nothing other than his affidavit. There's no psychiatric report that says, yes, this fellow is sane, competent, able, coherent, and so forth? Nothing like that? No, in the sense that if your question, there isn't is the simple answer, but I understand your question is going to the issue of whether there's anything in there that refutes his sworn affidavit. And, of course, inherently, his two state habeas petitions in 2003 refute his claim of being mentally ill as of 2003. Well, no, but that assumes, I think as counsel argued and Judge McKeown commented, that mental illness is like a stable mental status. It never changes. And you're saying once he becomes, you know, I'll use the word competent, although maybe that's not correct, you know, psychiatrically, but once he becomes competent, he's going to stay at that level forever. I don't think it does assume that. Well, why doesn't it? In other words, you know, the magistrate judge said there's plenty of evidence that he was, you know, he had a lot of mental illnesses. And you're saying, well, but he filed his petition, a state petition, so that means he's competent dental. There's no evidence that he, you know, got worse after that, right? That's not what I'm saying, Judge Tashima. The question is not the merits of whether he was, in fact, competent or not as of 2003. Your point goes to whether or not there was anything in the record to refute his sworn claim that he was delusional. Right. During the relative running of the statute of limitations, during the running of the limitations period. And I'm simply saying that by filing two state habeas petitions in 2003, there is de facto evidence to refute that. He did have a report and recommendation that was provided to him in which he did. No, but the magistrate judge assumes that because he was, you know, coherent enough to complete his state habeas petition, that that evidence is the ability to, you know, file a habeas petition from thereafter. Right. That's what, you know, and that's the, you know, sort of psychiatric opinion from the magistrate judge that bothers me. What is that based on? I don't think that that's what the magistrate judge was saying. The magistrate judge was saying that based on the evidence before him. And the only evidence is that he filed the state habeas petition, right? Right. On May 23rd, 2003. And the conspicuous absence of anything from 1995 through 2003. Well, except his affidavits, you know. His sworn affidavits. Why is that not evidence? Well, it is evidence, but it is questionable. Right, and the court rebuts that evidence, you know, for a period after May 23rd, 2003. Nothing after May 23rd, 2003 other than his failure to submit anything in response to the report and recommendation. He had an opportunity. In other words, you see, law says, laws says at one point, we do not know whether laws as mental condition has deteriorated, you know, since a certain time. And the only thing in the record is unrebutted allegation. And that's similar to the record here, isn't it? Except that you say it's for the habeas petition, state habeas petition. I don't believe it's unrebutted. I do believe that the two state habeas petitions are inherently rebut the allegation. And we can't lose sight of the fact that in laws, the ultimate factual issue was his claims of mental incompetency. And that's, in fact, what the laws court held, is that you do get, if you make allegations of mental incompetency, and it's certainly connected to the but-for aspect of this test, and then you are entitled to a hearing to try to prove up, or at least a further factual development of the record. In this case, we have an allegation that's been rebutted by other evidence submitted by the state, the copies of his 2003 habeas petitions. We have an R&R that he responds to as simply more of the same claims of, I don't trust my jailhouse lawyers, I don't trust my jailhouse lawyers. And we have no suggestion whatsoever that any of this goes to competency within a legal sense. Could I just clarify one thing? Yes, sure. He was somewhat busy in the 90s in the state court. So what is his deadline for the federal habeas petition? What should it have been? I mean, I'm a little confused because the magistrate judge tolls it from 1996 to the filing of the California petition. It gives him his tolling period. But when was his petition due? So from what date must tolling be looked at? I believe it was from 1997. He didn't do anything in the 90s. I think what you're referring to is all of the proceedings that were undertaken pretrial and then immediately upon pleading and then sentencing recommendations because he was a juvenile at the time, and there was some question as to whether he should be housed at CYA or not. But I think the finality of judgment was in 97, and the district judge granted him equitable tolling from 97 through 2003 and then said from that point forward when he began to file state habeas petitions, clearly whatever distrust he had of his jailhouse lawyers was at least not so severe at that point that it prevented him from filing petitions. And you take the position that it shouldn't have been tolled even from 2007 to 2003, correct? Yes, because there's no evidence. As opposing counsel pointed out, there is some language within the evaluations from 1995 and earlier that implies or suggests that there might be an ongoing condition, and at one point one of the evaluators does mention organic brain syndrome, balanced against another evaluator who simply said, I think he's malingering and I don't think that he really has the conditions that he claims. But even assuming he does, he has a pleading burden, which is essentially what laws is about. It's your pleading burden. And he's never pled here, even though he has admittedly used the word delusional a few times, he's never pled that he was incompetent. All he's ever said is, I couldn't file on time because I didn't trust people who knew the law. And the Ninth Circuit law has been clear that a failure to understand the law is not an adequate basis for equitable tolling. And so I don't think that his claims of incompetency, as counsel phrases it this morning, although I don't think he's ever used, I don't think petitioners ever used that word himself. He's used delusional, I believe, and mentally ill. I don't think he's ever said incompetent. Certainly there's no evidence of mental incompetence in a legal sense. He has not met his pleading burden, and if in fact the court was inclined to say this is enough, we're starting down that slippery slope in regards to equitable tolling that has the potential to eviscerate the statute of limitations. An allegation of mental impairment alone shouldn't be enough to satisfy his pleading burden. In a moot court I did before here, I used the term before some of my moot judges, I said I think it would be fair to suggest that the majority of prisoners have some sort of mental impairment. Of course, there's no factual evidence to support that. But what he's really talking about is that it was hard. It could be true of the majority of people in this courtroom, or sitting on this side of the bench. I won't go that far, Judge Tsushima. Just the majority? You're talking about the right side or the left side? Oh, no, you mean this side. Okay, I wasn't sure. I'm just speaking of a minimum floor. I think that what he's used... I think probably being locked up in a small cell in a facility with other violent people probably exacerbates whatever mental power somebody might have. So there's probably something to that. So the line you would draw and the way you would distinguish Gaston and laws, if I can just characterize your argument and correct me if I'm wrong, is that if the prisoner claims incompetence, that he had a mental illness that actually amounted to incompetence, then he gets a hearing. If he simply claims, I had a mental impairment, I was mentally ill, and so it made it more difficult for me to get my petition, my act together to get the petition filed, then that's not enough to get a hearing. Is that where you're drawing the line? In part. I don't agree with the characterization of the first part where you said if a petitioner claims mental incompetence, under laws he's got a pleading burden. He's got a what? He has a pleading burden. He has to plead mental incompetency, and he doesn't have a burden of persuasion, but the evidentiary record can't be such... I'm sorry, so you think pleading and claim is different? No, no, Judge, because... He has a claim and you're saying he has a pleading burden. I'm just trying to understand what your disagreement is. I understand. Well, I don't understand. You may understand, but I have no idea. The distinction I'm making with the way that you characterized my argument is that I don't believe it's enough to claim, plead, however you want to phrase it, to claim that you have, under laws, that you are mentally incompetent during the limitations period. That law says in that factual situation, and as most Ninth Circuit cases have been concerning equitable tolling, they're always very fact-specific. In laws, under those facts, it was enough to get further factual development for the petitioner to claim slash plead that he had mental incompetency. But there is a large factual distinction there. There, in laws, the question was what was going on with him mentally between the period that the statute of limitations began to run and the time he filed his first state habeas petition, because the period expired in between there. You know, you may understand where you're going with this, but you were trying to explain to me where you differed. I mean, I've gotten completely lost. I said claim, and now you sort of went into a whole discourse of cases and what happened there. Can you just tell me where you disagree? It's just so I understand. Can you make it in two sentences? Under laws, it's not enough to simply claim mental incompetency. There must be an evidentiary record that doesn't rebut the claim. Well, you know, there's some irony in that statement because you have a pro se petitioner, and if he is mentally incompetent, you're imposing on him the burden just to get an evidentiary hearing to use magic words, which if he actually is mentally incompetent would be kind of a miracle if he came up with all green balls when he pled his case. It's not just Catch-22. Like Catch-22, it is Catch-22. If he's sane enough to explain that he's insane, then he's not insane. I'm sorry, but I don't agree. You don't know Catch-22? No, I said I don't agree with Judge McEwen's claim. It's a question. I think they ask in their petition for judgment as a matter of law that he's entitled to equitable tolling. I think that's one of their claims. Without making a final decision on that, that's not a very strong claim. So really what we're talking about is does the guy get a hearing? Or an opportunity for factual development. An opportunity for some kind of being able to put in an expert, get himself an appointed counsel somewhere or pro bono counsel and make himself a hearing. This is a pretty strong record of some mental illness with this pretty young guy. Why does the state fight so hard on something like this where it's just a question of he's going to show up or he's not on his hearing? The short answer to the last part of your question is that ultimately this goes back to what I said a few moments ago. This is a dangerously slippery slope regarding equitable tolling. Equitable tolling seems to be an ever-expanding area of litigation, and the state has an interest in trying to confine that to what we interpret Congress's intent as. And so to continue to allow an expansion of what's going to be necessary in order to get even a hearing is, we think, is heading down a road that we don't want to go down. But you would agree that mental incompetency rises to the level of extraordinary circumstances in terms of tolling, correct? In terms of the line circuits law, yes. I mean, that ultimately goes to our third point, which I'm assuming no one really wants to discuss. I don't want to discuss it. I'm not sure the court does. Well, we don't really have any ability to overrule line circuit law. We're just preserving the claim, as counsel pointed out, preserving it for potential bond review. But going back to your previous point about the irony involved, we're not saying that any petitioner, certainly not this petitioner, has to use any magic words. But any petitioner has a pleading burden of some sort, whether it's factual pleading on the merits of his claim or whether it's a pleading burden, in this case, as to further factual development for statute of limitations purposes. And it's not his failure to use magic words. It's not his failure to ever use the word incompetency. It's the nature of his claim. His claim is interwoven, cannot be separated from the fact that he's always claimed, I just don't trust my jailhouse lawyers. That's the substance, the nub of his claim. And that's not enough. Okay. Thank you. Thank you. You have ten minutes for rebuttal. Your Honors, as cited in my brief, Brees v. Stewart, 121 F. 3rd, 486, says you look at a person's entire psychiatric history in determining whether or not there is a showing. Well, how do we keep, I mean, you don't think counsel makes a pretty good point that then we'll have the entire prison population in the Ninth Circuit pretty soon in our district courts litigating whether or not they're nuts. You've got to hand it to Mr. Danzig, right? Mr. Danzig has a point there. Most people, if you push them, could be shown to have some mental instability, and prisons are highly destabilizing institutions. The kind of things that really sort of push on people's boundaries in a lot of ways. And I bet you that half the people in prison or more could make out a case of mental illness and then we're here litigating under that power, litigating whether or not they were sufficiently mentally ill to toll the statute of limitations. What do we do about that? Well, Your Honor, I think there's a qualitative difference between that situation, as presented by Mr. Danzig, and the factual situation here. Here there's overwhelming evidence of mental illness, ongoing lifetime mental illness, with chronic mental illnesses of paranoid schizophrenia and bipolar disease. This is not just somebody saying, well, gee, I've had a hard life, I'm in prison, I must have problems, and just alleging something, well, gee, I have a mental defect. This is somebody with a lifelong history that's been established, that's been documented, and going back before the alleged crime was even committed. So there's a substantial... And you think that if we sort of took a survey of the prison population in, let's say, California, we would find that there's a dearth of people like that? I would just, based on previous petitions I've seen, this is more common than not. Well, I think the distinctive feature here is my client's delusional state of mind, where he's out of touch with reality. That's not just saying he doesn't... Well, what has he really said, other than, look, I just couldn't get my act together to talk to my prison scriveners? Well, he had delusions that these people were in the mafia, that they were trying to kill him, that he was afraid to be heard. He's not entitled to any help at all, constitutionally. And so did he say, gee, I didn't know where the mailbox was, I didn't know where the courthouse was? He didn't say that. He just says the people I would have turned to for help I was afraid of. Well, too darn bad. You're not entitled to help at all. Well, but his ability to prepare and communicate and do what he needed to do is the product of this mental disease. Could he lick a stamp and address it? Well, I don't know whether to give him stamps, but could he address an envelope and stick it in the prison system? He's not entitled to more than that. He's not entitled to help. He's not entitled to a lawyer. He's not entitled to the help of other prisoners. If he can get it, it's fine. But since there's no constitutional right to those things, how does the fact that he can't get that help give him equitable tolling? Because I think he does have a right to equitable tolling if his mental disease interferes with his ability to do whatever he needs to do to get the petition filed. Well, I guess you haven't persuaded me of that. It's one thing to say, look, I couldn't, I was so deficient in my mental ability, I don't know how to address an envelope. I didn't know how to write on the envelope, send it to the federal court, whatever you need to do to get the prison to put a stamp on it and put it in the prison system. Or I was so delusional, I had no idea I was in prison. I thought I was in paradise, whatever. It's quite different to say, I needed help from these people and I couldn't communicate with them. I don't see where that winds up being a constitutional claim. I think it goes to the reason, if his mental delusion creates a break from reality such that he can't do whatever he would do or need to do to get the petition filed, I believe that that requires equitable tolling, and I believe at least in evidentiary hearing. And if I could make one factual point. Let me ask you just briefly, has he claimed anything other than he couldn't consult with his scriveners? Well, yes, he was claiming during the period of time he was delusional, he was out of touch with reality. Well, you could have all of those things and still be able to file a petition.  Other than the fact that he couldn't communicate with his prison lawyers. Well, during the period of time he was out of touch with reality. If you're out of touch with reality, you're not going to be able to prepare your petition. You're not going to be able to take the steps necessary. And in terms of that time period from when he filed the state petition, you know, as noted in one of the psychiatric reports. I guess I'm having trouble understanding what out of touch with reality means. It's a very vague concept. It could mean everything from, gee, I woke up and I thought I was in Rome, or I thought I was Napoleon, to I had some difficulty communicating. When I talked to people, I was very hostile. What specifically does it mean in terms of the process of filing a habeas petition? Well, I think in terms of his delusional state, and he has best tried to describe and has explained in numerous mental health reports going back, he doesn't know the difference between what is real and what is not real. He doesn't know. He lives in a world inside his mind that is not reality, and you can't possibly in that situation properly prepare a legal document. It is like you say, using your analogy, he thinks he's Napoleon. He thinks other people are these people totally out of touch with his reality who he can't do things with. I think with an evidentiary hearing, this can all be further developed. These are severe psychiatric lifelong diseases, and in terms of the notion that you can be, you know. And the fact that during that time he filed state petitions doesn't, I mean he could have when he filed a state petition. He obviously got his act together enough. He could the same day instead have filed a federal petition. Well, Your Honor, as described by one of the mental health professionals, and I think it would really be for these kind of diseases, it just makes common sense, you need to be getting the proper medication. You need to be getting the proper mental health help to remain in a lucid state where your mind is in touch with reality. And in fact, one of the health professionals specifically indicated without this help, he's going to remain delusional and out of touch with reality. You understand my question. My question has to do, you know, he goes, he does whatever he needs to do. He gets a piece of paper. It's funny to say, look, I was gaga. I thought I was Napoleon. I was going around trying to direct the Battle of Waterloo, so I, you know, I wasn't there mentally to file a legal document. But he actually files a document. He gets a piece of paper. He writes on it. He puts it in an envelope, and he sends it to the state court. Now, as it happens, that doesn't have the effect of tolling anything because the state court eventually bounces it as untimely. So it has no legal effect vis-à-vis his federal rights. But the same day, instead of putting the envelope and sticking it in the mail and saying Superior Court, you know, wherever he sent it, he could have said District Court, San Francisco, you know, what district does this come from? Addressing it to the, huh? Addressing it to the public district. So the same day, instead of sending it to the state authorities, why couldn't he send it to the federal authorities? Well, because, Your Honor, I think then he would not have exhausted his state claims. So I don't think he could have done that. Well, no, I thought his federal petition was due in 97. You're assuming that the subsequent petitions he filed were somehow effective for anything. Well. As opposed to he'd already filed a pleading, which was then construed by the state court in 1996 to be a habeas petition in the state court. So, I mean, one of the difficulties is that he really should have filed this thing in 1997. So by the time he doesn't file it in 2003, but he instead goes to the state court, he might understandably be under some misapprehension of the law and the timing. But that wouldn't net him any relief would it? Well, he has alleged his mental delusional state during the entire period of time off and on. And it may be if you've got a year and you're. . . But I'm giving him, for purposes of my question, I'm giving him the same thing the district court gave him. I'm giving him the period between 97 and 2003. Now the state would dispute that, but for purposes of my question, I am assuming he is mentally incompetent until 2003. 2003, he gets his act together. He files a petition. He files it in the wrong place. He doesn't file it in federal court. If he had filed it in federal court that day, rather than sending it to the state court, then we'd be faced with the question of, well, he was delusional from 97 to 2003. Does he get equitable foiling for that? The district court says yes, he gets equitable foiling for that, but then immediately he files in federal court. His problem is he files in the state court, waits, and he's out of luck. Well, again, his delusions, his break with reality, really interfere with his ability to do what he needed to do. You mean he was sane enough to know he has to file his petition, but his delusion was such that he confused state court with federal court? Why is this exactly the kind of mistake that prisoners make all the time? They send it to the wrong court. Because, again, if it was just a matter of not understanding the law, et cetera, yes, the case law says that merely not understanding the law is not a sufficient ground. However, his delusions and his break with reality severely limited the times in which he had to do an analysis of the law to get help. So it's not just a matter of him not knowing the law. It's a matter of time being eaten up and eaten up and eaten up at the times when he is not in a mental state, where he is in touch with reality such that he can do what he needs to do. Thank you. Thank you, Your Honor. The case just now stands submitted. Next, the argument in United States v. Garcia. Thank you.
judges: Kozinski, Tashima, McKeown